FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 21 2012

JAMES W. McCORMACK, CLERK

By:_____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**KAREN MAYFIELD**                                              **PLAINTIFF**

**VS.**                    **NO. 23-CV-2012-337**

**NATIONWIDE MUTUAL FIRE**
**INSURANCE COMPANY**                                           **DEFENDANT**

4:12 cv 305 Sww

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§1441 and 1332, defendant Nationwide Mutual Fire

Insurance Company ("Nationwide") states as follows:

1.     Plaintiff Karen Mayfield commenced an action in the Circuit Court of

Faulkner County, Arkansas, Fifth Division, entitled *Karen Mayfield vs. Nationwide*

*Mutual Fire Insurance Company*, Case No. 23CV-2012-337 by the filing of a

complaint (the "Complaint") on April 18, 2012.   This case assigned to District Judge Wright
and to Magistrate Judge_____ Kay

2.     This Notice of Removal is filed within thirty days of delivery of a copy

of the Complaint to Nationwide.  Copies of a summons and the Complaint with

exhibits and the Answer filed by Nationwide in circuit court, are attached hereto as

Exhibit 1, and constitute all the known process, pleadings, and orders that have

been filed in state court.

3.     In the Complaint, plaintiff alleges she is an individual resident of

Faulkner County, Arkansas.

4.     Nationwide is an insurance company organized and domiciled in the

State of Ohio, with its principal place of business in Columbus, Ohio.

1102473-v1

5.     Nationwide is not incorporated in the State of Arkansas and has no principal place of business in Arkansas.  There is, therefore, complete diversity among the plaintiff and defendant under 28 U.S.C. § 1332(c)(1).

6.     This civil action is removable pursuant to the provisions of 28 U.S.C. § 1441 because no defendant is a citizen of the State of Arkansas, where plaintiff resides.

7.     This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

8.     Plaintiff alleges that she has suffered compensatory damages in the sum of at least $600,000 and seeks punitive damages in an amount no less than $100,000 and no greater than $1,000,000.  Plaintiff is also seeking attorneys' fees and costs and interest.  Thus, based on the Complaint, the amount in controversy exceeds $75,000.00.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the United States District Court for the Eastern District of Arkansas, Western Division, embraces the Circuit Court of Faulkner County, Arkansas, where this action was first filed.  However, Nationwide reserves the right to file a motion to transfer this case to another venue if appropriate pursuant to 28 U.S.C. § 1404(a), and does not waive its right to do so.

10.     Pursuant to 28 U.S.C. § 1446(d), Nationwide will give notice of the filing of this Notice of Removal to plaintiff and will file a copy of this notice with the Clerk of the state court in which this action was originally filed.

11.     This Notice of Removal is well-grounded in fact and is warranted by existing law.  It is not interposed for an improper purpose.

12.     Nationwide reserves its right to plead any matter constituting an affirmative defense and does not waive its affirmative defenses by filing this Notice of Removal.

WHEREFORE, Nationwide Mutual Fire Insurance Company removes the state court action from the Circuit Court of Faulkner County, Arkansas to this Court, and prays that this Court take jurisdiction of this civil action to the exclusion of any further proceedings in the state court.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL:  ryoung@wlj.com

By _____
Regina A. Young (96761)
Attorneys for Nationwide Mutual Fire
Insurance Company

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following, by U. S. Mail this _21st_ day of May, 2012.

Michael U. Sutterfield
ATTORNEY AT LAW
515 Oak Street, Suite A
Conway, Arkansas  72032

## IN THE CIRCUIT COURT OF FAULKNER COUNTY, ARKANSAS
### 5th DIVISION

FILED

2012 APR 18  PM 4:00

KAREN MAYFIELD                                                    **PLAINTIFF**

VS.             CASE NO. 23CV-12-337

~~RHONDA WHARTON, CLERK~~

BY _____ DC

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY                                                **DEFENDANT**

### COMPLAINT FOR BREACH OF CONTRACT

Comes now Karen Mayfield, hereinafter referred to herein as the Plaintiff, by and

through her attorney, Michael U. Sutterfield, and for her complaint for breach of contract against

Nationwide Insurance Mutual Fire Insurance Company, hereinafter referred to as the Defendant,

does hereby state and allege as follows:

1.  That the Plaintiff is a resident of Faulkner County, Arkansas. That the real property

    described herein, being the subject matter of this complaint, lies within Faulkner County,

    Arkansas.

2.  That the Defendant, Nationwide Mutual Fire Insurance Company, is a corporation

    existing under the laws of the State of Arkansas. That the agent for service of process is

    Commissioner, Jay Bradford, of the Arkansas Insurance Department.

3.  That the subject matter of this action involves obligations pursuant to an insurance

    coverage agreement by and between the Plaintiff and the Defendant, a copy of which is

    attached to this complaint, marked Exhibit "A" and is incorporated herein by reference.

    That the property covered under the terms of the contract, Exhibit "A," is real and

    personal property located at an address of 35 Stone Hill Drive in the City of Mayflower,

    Faulkner County, Arkansas.



23CV-12-337      231-23100002472-012
KAREN MAYFIELD V NATIONWIDE 30 Pages
FAULKNER CO     04/18/2012 04:00 PM
CIRCUIT COURT          CC05

4. That venue in this matter is proper under A.S.A. §23-79-204 in Faulkner County, Arkansas; where the covered loss occurred.

5. That this court has jurisdiction of the parties and the subject matter of this action.

6. That pursuant to a contractual agreement by and between the Plaintiff and Defendant, specifically Exhibit "A," the Defendant agreed to provide insurance coverage to the property owned by the Plaintiff and her deceased husband; including, but not limited to, the dwelling located on the residence premises, other structures on the premises that are separate from the dwelling, and personal property owned or used by the Plaintiff at the residence.

7. That as of the date of filing this complaint, the Plaintiff has paid each and every premium due under the policy and the policy was never terminated; thus, the policy was in full effect at the time of the incident recited herein.

8. That on or about April 25, 2011, high winds swept through the Plaintiff's residential community with the Plaintiff's residence located at an address of 35 Stone Hill Drive in the City of Mayflower, Faulkner County, Arkansas.

9. That as a result of the winds associated with the storm, the Plaintiff suffered extensive damage to her residential and personal property located at 35 Stone Hill Drive in the City of Mayflower, Faulkner County, Arkansas.

10. That the Plaintiff suffered damages including, but not limited to, the following:

   a. Physical Damage to any and all structures located on the above described property; and/or

b.     Damage to Plaintiff's residence despite the best efforts available to the Plaintiff, the residence has become infested with mold as a result of extensive water damage; and/or

c.     Damage to Plaintiff's horse barn insofar as the roofing on said barn was ripped off as well as damage to the property inside; and/or

d.     Damage to Plaintiff's storage houses insofar as damage to the roof of one storage house and complete damage to the second storage house; and/or

e.     Other damages that will be proven at trial such as cracks to the ceiling, cracks to the wall joints, cracks to the balcony floor and stone separation from the brick veneer; and/or

f.     That the Plaintiff has utilized her personal finances to safeguard said property from further damages.

11. That proper notice of the damages were given to the Defendant through its agents, Brad Barnett and Paula Abbot; however, due to the delay in payment on behalf of the Defendant and the extent of the damages incurred to the Plaintiff's property, the Plaintiff has retained the services of various companies in an effort to mitigate any further damages that may be had to Plaintiff's property.

## COUNT I
## BREACH OF EXPRESS CONTRACT

12. That the Plaintiff reaffirms the allegations contained in paragraphs 1 through 11 above.

13. That the Plaintiff entered into an express contract, the terms being set out in Exhibit "A" as incorporated herein, with the Defendant to provide insurance coverage to the Plaintiff's real and personal property.

14. Pursuant to said agreement, referenced as Exhibit "A," the Defendant agreed to insure, for consideration paid by the Plaintiff, said property against the loss or damage occurring to the property on or about April 25, 2011 and to provide payment for damages in a timely manner.

15. That on or about April 25, 2011, while the insurance coverage was in full force and effect, high winds swept through the residential community of the Plaintiff and damaged the Plaintiff's property.

16. That the Plaintiff notified the Defendant of the damage in a timely manner.

17. That the fair market value of the Plaintiff's residential property, prior to the storm, has been diminished as a result of damages to the property and that the Defendant has failed and refused to comply with the contractual agreement by and between the parties, Exhibit "A," and has failed to furnish repairs and compensation to the Plaintiff.

18. That the Plaintiff has acted in good faith and has made demands for payment, submitted claims, submitted to recorded statements, submitted repeated invoices as well as damage reports, estimates, expert opinions and the Defendant has failed and refused to pay the Defendant's legal obligations under the terms of the contract, Exhibit "A."

19. That the Defendant has ultimately refused to restore the Plaintiff's residence and personal property or pay the Plaintiff's claim.

20. At all times relevant hereto, the Plaintiff has performed her obligations under the insurance policy agreement.

21. That the Plaintiff's homeowners policy is silent as to a time in which the Defendant must pay on a loss following a claim. That because said policy is silent as to a time period in which action is to be taken, the losses must be paid within a reasonable time under the

laws of the State of Arkansas. That a reasonable amount of time has passed and the Defendant continues to deny repair claims to the property and is only paying smaller claims for repairs to the property.

22. That by the Defendant refusing to pay the Plaintiff's claims for the damage(s) sustained to the Plaintiff's residential and personal property, the Defendant has breached the terms of the agreement between the Plaintiff and the Defendant, Exhibit "A."

23. That the Plaintiff is entitled to her attorney's fees and penalty since a demand has been made and the Defendant has failed to pay for the insured Plaintiff's loss within a reasonable time.

24. That the Defendant's failure to pay this claim has made it necessary for the Plaintiff to incur additional expenses and financial hardship by hiring various sub-contractors to restore the Plaintiff's property to it's current state. That the Plaintiff has incurred in excess of Sixty Thousand dollars ($60,000.00) in out-of-pocket expenses in an effort to prevent additional damages.

25. That as a direct and proximate result of the Defendant's breach of the parties' agreement, Exhibit "A," the Plaintiff has suffered damages in an amount hereinafter stated.

## COUNT II
## BAD FAITH

26. That the Plaintiff reaffirms the allegations contained in paragraphs 1 through 25 above.

27. That the Defendant has engaged in affirmative misconduct that has been dishonest, malicious and/or oppressive.

28. That the Defendant has engaged in the following conduct including, but not limited to, the following:

a.     Continually allowed the Plaintiff to expend funds to restore said property without any compensation or without any legal justification;

b.     Unwillingness to pay said claim even after the Plaintiff followed the directions of the Defendant and submitted various receipts and documentation reflecting payment(s), submitting to recorded statements, submitting expert opinions as to damages; and

c.     In spite of the Plaintiff providing notice to the Defendant of the severity of the damage incurred to Plaintiff's property, the Defendant has intentionally continued to deny paying Plaintiff's claim, thereby causing additional damage to the property covered by the agreement of the parties, Exhibit "A."

29. That the Plaintiff's entitlement under the insurance policy is clear and unambiguous.

30. That the Defendant has failed and refused to repair the Plaintiff's residential property without any reasonable grounds to do so; it has no reasonable basis to deny paying the Plaintiff's claim.

31. That on or about March 12, 2012, mediation was conducted in an attempt to resolve the issues between the parties.

32. That the Plaintiff submitted documents to the Defendant, in which the Defendant ultimately rejected without providing a basis for said rejection of the documents.

33. That the continuing acts of the Defendant create an undue hardship upon the Plaintiff.

34. That as a direct and proximate result of the actions of the Defendant, the Plaintiff has suffered damages in the amount hereinafter stated.

## DAMAGES

35. That the Plaintiff reaffirms the allegations contained in paragraphs 1 through 34 and

   further alleges that as a direct and proximate result of the Defendant's actions, the

   Defendant has damaged the Plaintiff in the following manner:

   a. Payment under the terms of the policy, Exhibit "A," for repairs made to the

      property and damages to the real and personal property, cost and expenses set

      out in the terms of the referenced agreement. That repairs are ongoing to said

      covered property and as a direct and proximate result of the Defendant's

      refusal to pay said claims, damages to said property are increasing as a result

      of permanent repairs not being made. Such damages include not only covered

      damages under the terms of the agreement by and between the parties, Exhibit

      "A," but damages associated with funds expended by the Plaintiff to attempt

      to mediated damages to the property; and/or

   b. Payment for expenses of the Plaintiff associated with temporary housing and

      loss of use of both real and personal property as a result of the Defendants'

      failure to meet their contractual obligations pursuant to the agreement of the

      parties outlined in Exhibit "A" and other verbal obligations made by and

      between the parties; and/or

   c. That as a direct and proximate result of the Defendant refusal to act, without

      just cause, as is alleged in the above paragraphs, the Plaintiff is entitled to

      punitive damages for the Defendant's actions or inactions; and

    d.  That the Plaintiff has incurred expenses, attorney's fees and other cost associated with the Defendant's failure to honor the terms of the contractual agreement, Exhibit "A."

36. That the Plaintiff is entitled to damages in an exact amount to be determined, but alleged to by the Plaintiff to be Six Hundred Thousand Dollars and 00/100 ($600,000.00) for the breach of the agreement of the parties and incidental damages occurring as a result of the breach of the agreement by and between the parties, Exhibit "A."

37. That the Plaintiff is entitled to punitive damages against the Defendant in an amount within this court's jurisdiction, not less than $100,000.00 nor more than $1,000,000.00.

**WHEREFORE,** the above premises being duly considered by the Court, the Plaintiff prays for a judgment against the Defendant for compensatory damages in the sum of no less than Six Hundred Thousand Dollars and 00/100 ($600,000.00) with interest at the legal rate as allowed by law until paid; for costs, a reasonable attorney's fee and punitive damages in the amount of no less than One Hundred Thousand Dollars ($100,000.00) nor more than One Million Dollars and 00/100 ($1,000,000.00) any and all other just and proper relief to which Plaintiff may be entitled.

Respectfully submitted,
Karen Mayfield, by:

Michael U. Sutterfield
Attorney at Law, AR Bar No. 86161

*Conway Physical Address:*
515 Oak Street, Suite A
Conway, AR 72032
(501) 329-0992

*Mailing Address:*
P.O. Box 933
Conway AR 72033
Fax: (501) 329-7389

*Little Rock Physical Address:*
300 Spring Building, #804
Little Rock, AR 72201
(501) 372-2565





**EXHIBIT**
**A**

**HOMEOWNER POLICY**
**DECLARATIONS**
Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Number:**
63 03 HO 282176

**Issued:**
FEB 21, 2011

**Policyholder:**
(Named Insured)
PHILLIP H & KAREN
MAYFIELD
PO BOX 774
MAYFLOWER AR 72106-0774

**Policy Period From:**

MAR 27, 2011 to MAR 27, 2012 but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

---

**The Following Change(s) Have Been Made To Your Policy:**

The limit of liability for Section I Coverage A Dwelling is revised.

**Residence Premises Information:**

35 STONE HILL DR
MAYFLOWER
ST AR ZIP 721060000

ONE FAMILY
MASONRY VENEER DWELLING
YEAR OF CONSTRUCTION 2006

PROTECTION CLASS 7
RATED PROTECTION CLASS 7
INSIDE SINGLE CLASS AREA
WITHIN 1000 FT FROM HYDRANT
WITHIN 5 MILES FROM FIRE DEPT
PROTECTION TERRITORY 091

**SECTION I**

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE-A-DWELLING | $    666,100 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE-B-OTHER STRUCTURES | $    229,510 | |
| COVERAGE-C-PERSONAL PROPERTY | $    466,270 | |
| COVERAGE-D-LOSS OF USE | $    666,100 | |

**SECTION II**

| Liability Coverages | Limits Of Liability |
|---|---|
| COVERAGE-E-PERSONAL LIABILITY FOR EACH OCCURRENCE: PROPERTY DAMAGE AND BODILY INJURY | $    300,000 |
| COVERAGE-F-MEDICAL PAYMENTS TO OTHERS EACH PERSON | $      1,000 |

H5300

# HOMEOWNER POLICY DECLARATIONS

## OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| INFLATION PROTECTION | |
| BOECKH INDEX 0612.7 | APPLIES |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $   5,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $      500 |
| CREDIT CARD - FORGERY | $   1,000 |

#### Options Applicable

| | |
|---|---|
| OPTION-J-EXTENDED REPLACEMENT COST | |
| PERSONAL PROPERTY | APPLIES |
| OPTION-K-REPLACEMENT COST PLUS | |
| DWELLING | APPLIES |
| OPTION-L-PROTECTIVE DEVICE CREDIT | |
| LOCAL FIRE OR SMOKE ALARM SYSTEMS | APPLIES |
| FIRE EXTINGUISHERS | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | |
| COMPLETE LOCAL BURGLARY ALARM SYSTEM | |
| OPTION R-BROAD WATER BACKUP | |
| WATER BACKUP DEDUCTIBLE  $1000 | $  10,000 |

## PREMIUM SUMMARY

| Premium Based On | Premium Amount |
|---|---|
| POLICY PREMIUM | $   4,127.00 |
| WATER BACKUP | $       25.00 |
| Annual Renewal Premium | $   4,152.00 |

Annual Renewal Premium Includes Discounts For:

CLAIM FREE
LONG TERM
HOME/CAR
HOME PROTECTIVE DEVICE
NEW HOME

## FORMS and ENDORSEMENTS MADE PART OF POLICY

| | |
|---|---|
| HO 03-A | Homeowners Policy |
| H-6146 | Amendatory Endorsement |

## ADDITIONAL INTERESTS

**FIRST MORTGAGEE**

BAC HOME LOANS
SERVICING LP
ISAOA ATIMA
PO BOX 961206
FORT WORTH TX 76161-0206
LOAN #163001483

**SECOND MORTGAGEE**

TWIN CITY BANK
PO BOX 966
CONWAY AR 72033-0966



# HOMEOWNER POLICY
# DECLARATIONS

Non-Assessable
Page 3 of 3

**Policy Number:**
63 03 HO 282176

**Policyholder:**
**(Named Insured)**
PHILLIP MAYFIELD

**Issued:**
FEB 21, 2011

**Policy Period From:**
MAR 27, 2011 TO  MAR 27, 2012

---

**Issued By:** NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
**Countersigned At:** RALEIGH, NC
**Prior Declaration Issued:** FEB 26, 2010

Home Office — Columbus, Ohio
By: BRAD ALAN BARNETT

### IMPORTANT PHONE NUMBERS

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: BRAD ALAN BARNETT
501-224-7666

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 1-877-669-6877



# amendatory endorsement-
# insuring agreement

**Please attach this important addition to your policy.**

It is agreed that the policy is amended as follows:

Under the Insuring Agreement, the second paragraph is deleted and replaced by the following:

The applicable limits of liability and optional coverages you have chosen are shown on the Declarations. We may change the amount of coverage shown on the Declarations Page to reflect current costs and values when reconstruction cost estimates are conducted or when the policy renews. To maintain an appropriate amount of coverage, it is your duty to advise us of additions, alterations, or renovations to your dwelling. This policy applies only to loss which occurs while the policy is in force.

All other provisions of the policy apply.

This endorsement is issued by the company shown on the Declarations as the issuing company.

**Nationwide Mutual Insurance Company and Affiliated Companies**
**One Nationwide Plaza  Columbus, OH  43215-2220**
**Hearing or Voice Impaired:  1-800-622-2421 (TTY only)**
**nationwide.com**

Nationwide and the Nationwide framemark are federally registered service marks of Nationwide Mutual Insurance Company

H-6146

## *Table of Contents*          *Homeowners Policy*

**INSURING AGREEMENT** .................................................... A1
**DEFINITIONS** ....................................................... A1-A2
**COVERAGES:**

Section I - Property Coverages .................................. B1-B6
     Coverage A - Dwelling
     Coverage B - Other Structures
     Coverage C - Personal Property
     Coverage D - Loss of Use
     Additional Property Coverages
     Perils Insured Against ........................... C1-C2
     Property Exclusions ............................. D1-D3
     Property Conditions ............................. E1-E3

Section II - Liability Coverages .................................. G1-G3
     Coverage E - Personal Liability
     Coverage F - Medical Payments to Others
     Additional Liability Coverages
     Liability Exclusions .............................. H1-H4
     Liability Conditions .............................. J1

**POLICY COVERAGE OPTIONS** ............................... K1-K7

**GENERAL POLICY CONDITIONS**
How Your Policy May Be Changed ............................. L1
Concealment or Fraud ....................................... L1
Renewal .................................................... L1
Non-Renewal ................................................ L1
Cancellation During Policy Period .......................... L1
Policy Transfer ............................................ L2
Subrogation ................................................ L2
Death ...................................................... L2
Additional Insured - Non Occupant .......................... L2
Optional Payment of Premium In Installments ................ L3
Non-Sufficient Funds ....................................... L3
Dividends .................................................. L3

**MUTUAL POLICY CONDITIONS**
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company ................... L3

Includes copyrighted material of Insurance Services Offices, with its permission.
Copyright, Insurance Services Office, 1975, 1977.

HO-03-A

# Insuring Agreement

We will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

The applicable limits of liability and optional coverages you have chosen are shown on the Declarations. This policy applies only to loss which occurs while the policy is in force.

# Definitions

Certain words and phrases used in this policy are defined as follows:

1. "WE", "US" and "OUR" refer to the company shown on the Declarations as the issuing company.

2. "YOU" and "YOUR" refer to the named insured shown in this policy who resides at the residence premises. These terms also mean your spouse who resides at the same residence premises.

3. "BUSINESS" includes trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time, or temporary basis. Business also includes any occasional business pursuits of an insured, including ownership of rental property. It includes home care services regularly provided to a person or persons, other than insureds or insureds' relatives, for which there is monetary or other compensation. A mutual exchange of home care services is not considered compensation. Exceptions, if any, are noted on the Declarations.

4. "INSURED" means you and the following if residents of your household at the residence premises:
   a) your relatives.
   b) any other person under age 21 and in the care of you or your relatives.

5. "INSURED LOCATION" means:
   a) the residence premises.
   b) the part of any other premises, structures, and grounds used by you as a residence and shown in the policy; also any of these acquired by you during the policy period for your use as a residence.
   c) a premises you use with premises defined in 5. a) or 5. b).
   d) a part of a premises, not owned by an insured, where an insured is temporarily living.
   e) vacant land, other than farm land, owned by or rented to an insured.
   f) land, other than farm land, owned by or rented to an insured on which a one or two-family dwelling is being built as a residence for an insured.
   g) cemetery plots or burial vaults of an insured.
   h) a part of a premises rented on occasion to an insured for purposes other than business.

6. "MOTOR VEHICLE" means:
   a) a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to motor vehicle registration.
   b) a trailer or semi-trailer designed for travel on public roads  and subject to motor vehicle registration.
   c) any vehicle while being towed by or carried on a vehicle defined in 6. a) or 6. b).

7. "RESIDENCE PREMISES" means the one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated.

8. "AIRCRAFT" means any machine or device capable of atmospheric flight, except models.

*Insuring Agreement* _____

9.  "ACTUAL CASH VALUE" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

10. "FOUNDATION" means a building's substructure including substructural walls, i.e., basement walls, crawl space walls, etc.

11. "BIOLOGICAL DETERIORATION OR DAMAGE" meaning damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime, mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to:  yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

Other words are also defined. All defined words are in bold print.



# Section I
# Property Coverages

## Coverage Agreements

### COVERAGE A — DWELLING

**We cover:**

1. the dwelling on the residence premises used mainly as your private residence, including attached structures and attached wall-to-wall carpeting.

2. materials or supplies on or adjacent to the residence premises for use in construction, alteration or repair of:
   a) the dwelling; or
   b) Coverage B — Other Structures.

We do not cover land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE B — OTHER STRUCTURES

We cover other structures on the residence premises. They must be separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered other structures.

**We do not cover:**

1. other structures used in whole or in part for business purposes.

2. other structures rented or held for rental to anyone, unless used solely as a private garage.

3. land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE C — PERSONAL PROPERTY

We cover personal property owned or used by an insured at the residence premises. At your request, we will cover personal property owned by others. It must be on the part of the residence premises occupied by an insured. This extension of coverage does not increase the limit of liability.

Our limit of liability for personal property while away from the residence premises is 10 percent of the limit of liability for Coverage C or $1,000, whichever is greater. This 10 percent limitation does not apply to personal property:

1. removed from the residence premises due to a covered loss;

2. in transit to and from, or while in a newly acquired principal residence for 30 days. The 30 days start right after you begin to move the property; or

3. stored in a commercial storage facility up to 180 days. The 180 days start when you begin to move the property. A commercial storage facility does not include a self-storage unit.

SPECIAL LIMITS OF LIABILITY. Certain property is subject to special limits which do not increase the personal property limits of liability. The special limit, shown below for each numbered category, is the total limit for each loss for all property in that category.

B1

Section I — Property Coverages _____

The following special limits apply only to theft losses:

1. $1,000 for jewelry, watches, furs, and precious and semi-precious stones.

2. $1,000 for guns, including accessories.

3. $1,000 for cameras (film, digital or video), including accessories. It does not include cameras used in business.

4. $2,500 for silverware, silver-plated ware, goldware, gold-plated ware, and pewterware.

5. $1,000 for tools not used in business. This limit does not apply to lawn and garden tools used to service the residence premises.

The following special limits apply to all covered losses:

6. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins, stored value cards, smart cards, gift certificates and medals.

7. $1,000 for securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets.

8. $3,000 for computers, including hardware and software accessories, operating software, application software or other similar software, which can be replaced with like kind and quality on the retail market. This includes electronic storage media such as, but not limited to, tapes or diskettes. Stored data is not covered.

9. $500 for business property on the residence premises except computers including their hardware and software described above.

10. $1,000 for watercraft and outboard motors, including trailers, furnishings and equipment.

11. $1,000 for utility type trailers not used with watercraft.

12. $1,000 for manuscripts, regardless of the medium.

**PROPERTY NOT COVERED.** We do not cover:

1. articles separately described and specifically insured in this or any other insurance.

2. animals, birds or fish.

3. house or travel trailers.

4. motor vehicles or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:

   a) their parts or equipment, whether attached to or separated from the motor vehicle or motorized land conveyance; or

   b) accessory equipment; or

   c) any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the motor vehicle or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment. The most we will pay is $200 in any one loss, regardless of the number of such items. The loss must be caused by a covered peril.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a) used solely to service the insured's residence;

   b) designed to assist the handicapped; or

   c) a motorized golf cart while being operated to or from, or on the premises of a golf course.

5. aircraft and parts.

6. property of roomers, boarders, and other tenants. Personal property, at the residence premises, belonging to roomers and boarders related to an insured is covered.

B2

7. property in an apartment regularly rented or held for rental to others by an insured.

8. property rented or held for rental to others away from the residence premises.

9. business property away from the residence premises.

## COVERAGE D — LOSS OF USE

We cover, subject to the coverage limit which is the total limit, all of the following:

1. **Additional Living Expense.** If a covered loss requires you to leave the residence premises, we will pay the required increase in living expenses you incur to maintain your normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if you permanently relocate, for the shortest time required for your household to settle elsewhere. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

2. **Fair Rental Value.** If a loss covered under this section requires occupants to leave that part of the residence premises rented to others or held for rental, we will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the residence premises is uninhabitable. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

3. **Prohibited Use.** If a civil authority prohibits your use of the residence premises because of direct damage to neighboring premises by a peril insured against in this policy, we will pay the resulting loss, for up to two weeks while use is prohibited, for:
   a) Additional Living Expense; and
   b) Fair Rental Value.

We do not cover loss or expense due to cancellation of a lease or agreement.

This coverage does not apply to an insured's business, whether conducted on or off any insured location.

No deductible applies to this coverage.

# *Additional Property Coverages*

These additional property coverages are subject to the policy deductible except as noted. In no event will the deductible be applied more than once to any one loss.

1. **Debris Removal.** We will pay reasonable expense you incur removing debris of covered property, if the peril causing the loss is covered. This includes debris of trees that cause damage to covered property or covered structures, or that obstruct access to covered structures if such access is necessary to repair or replace the structure. We will pay only to move away from, or off of, covered property or covered structures, the debris of trees that cause damage to covered property or restrict access. An additional five (5) percent of the limit of liability for the damaged property will be available when the amount payable for the property loss plus the debris removal expense exceeds the limit of liability.

2. **Live Tree Debris Removal.** In the event of a loss, we will also pay the reasonable expense you incur for the removal of live tree debris from the residence premises, that does not cause damage to covered property or covered structures. The most we will pay is $500, regardless of the number of trees requiring removal, for any one loss. Loss must be the result of a Coverage C Perils Insured Against. This is an additional amount of coverage.

3. **Reasonable Repairs.** We will pay reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss is covered. This expense is included in the limit of liability applying to the damaged property.

4. **Trees, Shrubs, Plants, and Lawns.** We cover trees, shrubs, plants, or lawns on the residence premises for loss caused in the following perils: fire and lightning; explosion; riot and civil commotion; aircraft; vehicles not owned or operated by a resident of the residence premises; vandalism or malicious mischief; collapse of a building; or, theft. Liability is limited to five (5) percent of the Coverage A limit of liability for all trees, shrubs, plants and lawns. It is limited to $500 for one tree, shrub or plant. This coverage may increase the limit of liability.

   We do not cover property grown for business purposes.

5. **Fire Department Service Charge.** We will pay up to the amount stated on the Declarations for your liability under contract or agreement for customary fire department charges. This applies when the charges result from the fire department being called to save or protect covered property from a covered peril. No deductible applies to this coverage.

6. **Property Removed.** Covered property removed from a premises because it is in danger from a covered peril is covered for direct loss from any cause. The property is covered while being removed and for 30 days while removed. After 30 days the property is covered for direct loss from a peril insured against. This does not change the coverage limit.

7. **Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage.** We will pay up to the amount stated on the Declarations for:

   a) the legal obligation of an insured to pay theft or unauthorized use of credit cards (including Electronic Fund Transfer Cards or Access Devices) issued to or registered in an insured's name. However, we do not cover use by a resident of your household, a person entrusted with the credit card (Electronic Fund Transfer Card or Access Device), or any person if an insured has not complied with all terms and conditions under which the credit card (Electronic Fund Transfer Card or Access Device) is issued.

   b) loss to an insured caused by forgery or alteration of a check or negotiable instrument.

   c) loss to an insured through good faith acceptance of counterfeit United States or Canadian paper currency.

   All losses resulting from a series of acts committed by any one person or groups of persons or in which any one person or groups of persons is concerned or implicated is considered one loss. This is regardless of the period of time over which the acts occur.

   We do not cover loss arising out of the business pursuits, or dishonesty of an insured.

   We do not cover loss arising out of identity theft or identity fraud including a covered act as outlined in subsections a), b), or c) of this section.

   Identity theft or identity fraud means the fraudulent or attempted fraudulent use of an insured's personal information with the intent to obtain credit, property, services, or other benefit.

   Personal information means the name, address, date of birth, telephone number, driver's license number, nonoperator's identification number, social security number, place of employment, employee identification number, parent's legal surname prior to marriage, demand deposit account number, savings or checking account number, or credit card number of a person.

   No deductible applies to this coverage.

   We may make any investigation and settle any claim or suit as we decide is appropriate. Our obligation to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   If a claim is made or a suit is brought against an insured for liability under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, we will provide defense at our expense by counsel of our choice.

We may defend at our expense an **insured** or an **insured's** bank against a suit for the enforcement of payment under the forgery coverage.

Our duty to defend does not apply to identity theft or identity fraud.

8.  **Inflation Protection Coverage.** If the Declarations show this coverage applies, we will adjust the limit of liability on the Declarations for Section I — Coverages. The limit of liability will change as the appropriate index, shown on the Declarations, changes.

    We will compare the latest available index to the index as of the effective date of this policy.   We will adjust the limit of liability by the percentage change in the index. It is further agreed that the premium for this policy at the next anniversary date shall be for the adjusted limits of liability.

    If **you** request a change in the dwelling limit of liability, the effective date of this coverage will be amended to the effective date of that change.

    This coverage will not reduce our limit of liability during the current policy period below that for which premium has been paid.

9.  **Consequential Loss. We** cover **insured** personal property in a building at the **residence premises** for loss due to temperature change resulting from power interruption. There must be damage to the **residence premises** caused by a covered peril.

10. **Refrigerated Property.** If a power interruption occurs, off the **residence premises**, we will pay up to a maximum of $500 for loss of contents in a freezer or refrigerator due to temperature changes. You must use all reasonable means to protect the covered property from damage or this coverage is void.

11. **Lock Replacement. We** will pay up to $100 to replace the exterior door locks on **your residence premises** with deadbolt locks or to rekey the lock cylinders of existing deadbolt locks, whichever is less. This coverage applies only if the keys to **your residence premises** are stolen.

    No deductible applies to this coverage.

12. **Collapse. We** cover direct physical loss to covered property described in Coverages A, B and C caused by the complete **collapse** of a building structure or any part of a building structure. **Collapse** means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of **collapse** if:

    a)  it is standing but in danger of falling down or caving in;

    b)  it is standing but has separated from any other part of the building;

    c)  it is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.

    The collapse must be sudden and accidental and caused by one or more of the following:

    a)  one of the Coverage C — Personal Property perils insured against;

    b)  hidden decay of a supporting or weight bearing building structural member;

    c)  hidden insect or vermin damage of a supporting or weight bearing building structural member;

    d)  weight of:

        (1)  contents, equipment, animals or people; or

        (2)  rain, ice, sleet or snow which collects on the roof; or

    e)  defective material or methods used in the construction, repair or remodeling or renovation if the **collapse** occurs in the course of work being done.

    The presence of any decay, insect or vermin damage must be unknown to an **insured** prior to **collapse**.

Loss to an awning, fence, patio, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, or dock is not included under items b), c), d), or e) unless the loss is a direct result of the collapse of a building.

The limit of liability applying to the covered property is not increased by this coverage.

13. **Household Supplies.** We will pay up to a maximum of five (5) percent of the Coverage A — Dwelling coverage limit for direct physical loss to property described in Coverages A and B arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage, leakage, or escape of household supplies on the residence premises. Household supplies includes items currently in use or in your possession at the residence premises, in normal household quantities such as household cleaning supplies, pesticides, and other similar items.

Section I — Property Exclusion 1.j) does not apply to any loss covered under this **Additional Property Coverage, Household Supplies.** In no event, however, will we ever cover:

a) loss arising out of materials containing asbestos, lead, formaldehyde, fuel or petroleum products; or

b) any fee, assessment or expense of any governmental authority; or

c) loss arising out of household supplies possessed or used:

(1) for **business** purposes;

(2) for **illegal** purposes;

(3) by contractors; or

(4) on driveways or walkways.

14. **Biological Deterioration or Damage Clean Up and Removal.** In the event that a covered cause of loss results in biological deterioration or damage to property covered under Coverages A, B, and C, we will pay, up to the amount shown on the Declarations, for:

a) the cost to clean up, remove and dispose of the biological deterioration or damage to covered property; and

b) the cost of testing which is performed in the course of clean up and removal of the biological deterioration or damage from the residence premises.

The coverage amount shown on the Declarations for this Additional Property Coverage is the most we will pay for all loss or costs payable under this Additional Coverage. Such costs are payable only if you report the biological deterioration or damage to us within 180 days of having first discovered the biological deterioration or damage.

The covered cause of loss that causes or results in biological deterioration or damage to covered property must have occurred during the policy period.

This is an additional amount of coverage.

# Perils Insured Against
(Section I)

## Covered Causes of Loss

### COVERAGE A – DWELLING and
### COVERAGE B – OTHER STRUCTURES

We cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section I – Property Exclusions.

### COVERAGE C – PERSONAL PROPERTY

We cover accidental direct physical loss to property described in Coverage C caused by the following perils except for losses excluded under Section I – Property Exclusions:

1. fire or lightning.

2. windstorm or hail.

   Direct loss caused by rain, snow, sleet, sand or dust driven through roof or wall openings made by direct action of wind, hail, or other insured peril is covered. This peril includes loss to:
   a) rowboats and canoes inside or outside a building.
   b) other watercraft and outboard motors, including their trailers, furnishings, and equipment, while inside a fully enclosed building.

3. explosion.

4. riot or civil commotion.

5. aircraft, missiles propelled and spacecraft.

6. vehicles.

7. sudden and accidental damage from smoke. This does not include loss due to smoke from farm or industrial operations.

8. vandalism and malicious mischief.

   This peril does not include loss to property on the residence premises if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

9. theft, including attempted theft. Loss of property from a known location when it is likely the property was stolen is covered. Loss of precious or semi-precious stones from their settings is not covered. This peril does not include loss caused by any theft:
   a) committed by an insured.
   b) in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied.
   c) of money, securities, stamps, jewelry, watches, gems, articles of gold, silver, or platinum from any part of a residence premises usually occupied solely by an insured while rented to other than an insured.

C1

*Section I — Perils Insured Against*

This peril does not include loss caused by theft that occurs away from the residence premises of:

a) property while at any other residence owned by, rented to, or occupied by an insured, except while an insured is temporarily living there. Property of an insured student is covered at a residence away from home if the student has been there within 45 days prior to the loss.

b) trailers and campers.

c) watercraft and outboard motors, including their furnishings and equipment.

10. falling objects. This peril does not include loss to:

a) property in a building, unless the roof or an exterior wall of the building is first damaged by a falling object.

b) the falling object itself.

11. weight of ice, snow, or sleet which causes damage to property in a building.

12. accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. This peril does not include loss:

a) caused by or resulting from water that backs up from outside the dwelling's plumbing system and enters through sewers or drains; or water entering or overflowing a sump pump, sump pump well or other system designed to remove subsurface water drained from the foundation area except as may be provided elsewhere in this policy or by endorsement.

b) due to continuous or repeated seepage or leakage of water, steam or moisture which occurs over a period of time and results in deterioration, corrosion, rust, or biological deterioration or damage.

c) due to freezing except as provided by the peril of freezing.

d) to the system or appliance from which the water, steam or moisture escaped.

13. accidental electrical damage to electrical appliances, devices, fixtures and wiring. This peril does not include loss to transistors and tubes including picture tubes.

14. sudden and accidental tearing apart, cracking, bursting, burning or bulging of:

a) a steam or water heating system.

b) a fire protective sprinkler system.

c) an air conditioning system.

d) an appliance for heating water.

Freezing is not covered under this peril.

15. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance. This peril does not include loss on the residence premises while unoccupied, vacant or under construction unless you have used reasonable care to:

a) maintain heat in the building; or

b) shut off the water supply and drain the system and appliances of water.

# *Property Exclusions*

1.  We do not cover loss to any property resulting directly or indirectly from any of the following.  Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

    a)  Earth Movement and Volcanic Eruption.  Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking.  Volcanic eruption means: eruption; explosion; or discharge from a volcano.

    Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.

    b)  Water or damage caused by water-borne material.  Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material damage means:

    (1)  flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

    (2)  water or water-borne material which:

        (a)  backs up through sewers or drains from outside the dwelling's plumbing system; or

        (b)  overflows a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area.

    (3)  water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure.

    Resulting direct loss by fire, explosion, or theft is covered.

    c)  Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.

    d)  War or Warlike Acts. This includes insurrection, rebellion or revolution.  Discharge of a nuclear weapon is considered a warlike act even if accidental.

    e)  Nuclear Hazard, meaning any nuclear reaction, discharge, radiation, or radioactive contamination, all whether controlled or not or however caused, and any consequence of any of these.  Loss caused by nuclear hazard is not considered loss caused by fire, smoke, or explosion, whether these perils are specifically named in or otherwise included as a covered peril in Section I.

    f)  Increased Hazard, meaning any loss occurring while hazard is increased by a means within the control and knowledge of an insured.

    g)  Intentional Acts, meaning loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all insureds.

    h)  Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

    i)  Collapse, except as provided by Section I — Additional Property Coverages — Collapse.

   j)  Contamination or Pollution, meaning any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:

     (1)  solid, liquid, gaseous, or thermal irritants or contaminants, except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace;

     (2)  vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;

     (3)  fuel oil and other petroleum products; or

     (4)  any other waste materials or other irritants, contaminants or pollutants.

   k)  Loss Assessments, unless, optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

   l)  Government Acts, meaning any loss caused by seizure, destruction, or confiscation by order of any government or public entity.

     Loss caused by acts ordered by any government or public entity at the time of a fire to prevent its spread is covered if the loss caused by fire would be covered under this policy.

2.  We do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:

   a)  A fault, weakness, defect or inadequacy in the:

     (1)  specifications, planning, zoning;

     (2)  design, workmanship, construction, materials;

     (3)  surveying, grading, backfilling;

     (4)  development or maintenance;

     of any property on or off the residence premises, whether intended or not.

   b)  Acts or decisions of any person, group, organization or governmental body, whether intentional, negligent, wrongful or without fault. This includes the conduct or failure to act or decide by any of the aforementioned.

   c)  Weather conditions, if contributing in any way with an exclusion listed in paragraph 1. of this Section.

3.  We do not cover loss to property described in Coverages A and B resulting directly from any of the following:

   a)  freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

     This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

     (1)  maintain heat in the building; or

     (2)  shut off the water supply and drained the system and appliance of water.

   b)  freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

     (1)  fence, pavement, patio or swimming pool;

     (2)  foundation, retaining wall, or bulkhead; or

     (3)  pier, wharf or dock.

c) theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

d) vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

e) continuous or repeated seepage or leakage of water or steam over a period of time from a heating, air conditioning or automatic protective sprinkler system; household appliance; or plumbing system that results in deterioration, rust or biological deterioration or damage. Continuous or repeated seepage or leakage from, within, or around any shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceilings or floors, is also excluded.

If loss caused by water or steam is not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped.

f) (1)  wear and tear, marring, deterioration;

(2)  inherent vice, latent defect, mechanical breakdown;

(3)  smog or rust;

(4)  **biological deterioration or damage;**

(5)  smoke from agricultural smudging or industrial operations;

(6)  release, discharge, or dispersal of contaminants or pollutants;

(7)  settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;

(8)  birds, vermin, rodents, insects or domestic animals. Resulting breakage of glass constituting part of a covered building is covered;

(9)  root growth, movement or action;

(10) mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

(11) mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

If any of items f)(1) through (9) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, we cover loss caused by the water not otherwise excluded. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water escaped.

Under exclusions 3.a) through 3.f), any loss that follows is covered unless it is specifically excluded.

# *Property Conditions*

(Section I)

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable:

    a) to the insured for more than the insured's interest.

    b) for more than the limit of liability.

2. **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy is the amount of loss paid by the insured. We pay for covered loss above the deductible amount.

3. **Your Duties after Loss.** In case of loss, you must:

    a) give immediate notice to us or our agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company. If loss is caused by or results from the peril of hail, loss must be reported to us or our agent within 6 months of the loss event.

    b) protect the property from further damage. You must make repairs required to protect the property and keep a record of repair expenses.

    c) as often as we reasonably require:

    (1) show us the damaged property; and

    (2) provide records and documents we request and permit us to make copies.

    (3) submit to examinations under oath and sign same. At your or our request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

    d) submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    (1) the time and cause of loss.

    (2) interest of the insured and all others in the property involved and all liens on the property.

    (3) other insurance that may cover the loss.

    (4) changes in title or occupancy of the property during the term of the policy.

    (5) specifications of any damaged property and detailed estimates for repair of damage.

    (6) a list of damaged personal property showing in detail the quantity, description, actual cash value, and amount of loss. Attach all bills and receipts that support the figures.

    (7) receipts for additional living expenses and records supporting the fair rental value loss.

    (8) evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

4. **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by us paying:

    a) actual cash value at the time of loss, the amount not to exceed actual cash value, needed to repair or replace:

    (1) personal property and structures that are not buildings;

    (2) carpeting (including wall-to-wall) and cloth awnings;

    (3) outdoor antennas, whether or not attached to the building;

E1

   (4)  home appliances, unless built in as a part of the dwelling.

  b)  the cost to repair or replace without deduction for depreciation for buildings in Coverage A or B based on equivalent construction and use on the same premises except:

   (1)  we will pay no more than the **actual cash value** of the damage until the repair or replacement is made when the cost to repair or replace the damage is more than $1,000 or more than 5 percent of the amount of insurance in this policy on the building, whichever is less.

   (2)  when you claim loss or damage to buildings on an **actual cash value basis.** You may make claim within 180 days after the loss for any added loss based on the cost to repair or replace.

   (3)  if you choose not to repair or replace, we will pay only the **actual cash value** of the damaged building, not to exceed the applicable limit of liability.

**5. Loss Payment.** We will pay all losses as outlined in the above Loss Settlement Condition 4, subject to the following:

  a)  In case of loss to a pair or set, we may elect to:

   (1)  repair or replace a part to restore the pair or set to its value before the loss; or

   (2)  pay the difference between actual cash value of the property before and after the loss.

  b)  At our option, we may repair or replace any part of the damaged property with equivalent property, providing we give you written notice within 30 days after receiving your signed, sworn proof of loss.

  c)  We will pay you unless some other person is named in this policy to receive payment. Payment will be made within 60 days after we receive your proof of loss and:

   (1)  reach agreement with you; or

   (2)  there is an entry of a final judgment; or

   (3)  there is a filing of an appraisal award with us.

  d)  After we have paid for a loss by theft or disappearance of covered property, we have the right to all or part of any recovered property. You must protect these rights and inform us of any recovery. If you wish to retain the recovered property, **our loss payment will be adjusted by the value of such property.**

  e)  After we have paid for a loss, we have the right to all or part of any salvageable property. We may permit **you** to keep the damaged property but we will reduce the amount of the loss paid to you by the value of the retained damaged property.

**6. Appraisal.** If you and we fail to agree on the amount of loss, either can request that the amount be set by appraisal. If either makes a written request for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written request. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select a competent, impartial umpire.

The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. However, any such decision will not restrict **your** right to bring legal action against **us.** Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us.** Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the actual cash value, replacement cost, or cost to repair the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought against us unless there has been full compliance with the policy provisions. Any action must be started within five years after the date of loss or damage.

9. **Abandonment of Property.** We need not accept property abandoned by an insured.

10. **Mortgage Clause.** The word "mortgagee" includes trustee. If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a) notifies us of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.

    b) pays premium due under this policy on our demand, if you neglected to pay the premium.

    c) submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Your Duties after Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.

    If we cancel the policy for nonpayment of premium, we will notify the mortgagee at least 10 days before the cancellation takes effect. The reason for the cancellation shall accompany the notice. We will notify the mortgagee at least 20 days before cancellation takes effect if we cancel the policy for any other reason.

    a) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b) at our option, we may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** This insurance does not benefit a person or organization that is caring for or handling your property for a fee.

12. **Glass Replacement.** We will replace covered glass using safety glazing materials when required by ordinance or law.

13. **Valuation.** In the event of a total loss to the dwelling caused by fire or natural disaster, except flood or earthquake, we will pay the limit of liability applicable to the dwelling as shown on the Declarations. This does not apply to Coverage B — Other Structures.

E3



# *Section II*
# *Liability Coverages*

## ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. "BODILY INJURY" means bodily harm, including resulting care, sickness or disease, loss of services or death. Bodily injury does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2. "PROPERTY DAMAGE" means physical injury to or destruction of tangible property. This includes its resulting loss of use.

3. "RESIDENCE EMPLOYEE" means an employee of an insured who performs duties in connection with maintenance or use of the residence premises. This includes household or domestic services or similar duties elsewhere not in connection with the business of an insured.

4. "OCCURRENCE" means bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition. The occurrence must be during the policy period.

5. "INSURED" means you and the following persons if residents of your household at the residence premises:

   a) your relatives;

   b) any other person under age 21 and in the care of you or your relatives;

   c) a person or entity legally responsible for animals or covered watercraft that are either owned by or in the custody of an insured. A person or entity using or having custody of these animals or watercraft in the course of business, or without permission of the owner, is not an insured.

   d) any person operating, utilizing, or maintaining a covered vehicle while engaged in your employment or that of an insured.

# *Coverage Agreements*

## COVERAGE E — PERSONAL LIABILITY

We will pay damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over the applicable limits of liability.

## COVERAGE F — MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical and funeral expenses incurred within three years after an accident causing bodily injury. This coverage does not apply to you. It does not apply to regular residents of your household. It does apply to residence employees. Payment under this coverage is not an admission of our or an insured's liability. This coverage applies as follows:

1. to a person on the insured location with consent of an insured.

2. to a person off the insured location, if the bodily injury:
   a) arises out of a condition in the insured location.
   b) is caused by the activities of an insured.
   c) is caused by a residence employee of an insured.
   d) is caused by an animal owned by or in the care of an insured.

# *Additional Liability Coverages*

We will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions:

1. Claims Expenses. We will pay:
   a) expenses we incur and costs taxed against an insured in a legal action we defend.
   b) premiums on bonds required in a suit we defend. This does not include bond amounts greater than the Coverage E limit of liability. We are not obligated to apply for or furnish a bond.
   c) reasonable expenses incurred by an insured at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for assisting us in the defense of a claim or suit.
   d) post-judgment interest. This must accrue after entry of the judgment. It must accrue before we pay or deposit in court that part of the judgment which does not exceed the coverage that applies.

2. First Aid Expenses. We will pay expenses for first aid to others incurred by an insured for bodily injury covered under this policy. We will not pay for first aid to you or any other insured.

3. Damage to Property of Others. We will pay for property damage to property of others caused by an insured regardless of legal liability. We will pay up to $1,000 per occurrence, but not more than the smallest of the replacement cost or the cost to repair the damaged property. We will not pay for property damage:
   a) to property covered under Section I.
   b) caused intentionally by an insured who is age 13 or older.
   c) to property owned by or rented to an insured, a tenant of an insured, or a resident in your household.
   d) arising out of:
      (1) business pursuits.
      (2) an act or omission in connection with a premises owned, rented, or controlled by an insured, other than an insured location.
      (3) the ownership, maintenance or use of a motor vehicle, aircraft, or watercraft.

l)   resulting from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

m)  resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs.

This exclusion 1.m) does not apply to the legitimate use of prescription drugs by a person following orders of a licensed physician.

n)   **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by any **insured** under:

    (1) a workers' compensation;

    (2) an unemployment compensation;

    (3) a non-occupational or occupational disease;

    (4) a disability benefits;

    or any similar law.

o)   caused by any of the following animals owned by or in the care of an **insured**:

    (1) the following types of pure bred dogs or a mix breed including one of these types:

        (a) American Staffordshire Terriers, American Pit Bull Terriers, or Staffordshire Bull Terriers, all commonly known as Pit Bulls;

        (b) Doberman Pinschers;

        (c) Rottweilers;

        (d) Chow Chows; or

        (e) Presa Canarios;

    (2) wolf hybrids.

    (3) dogs that have been trained to attack persons, property or other animals; or dogs that have been trained to guard persons or property.

    (4) any dog, used in any manner, as a fighting dog or bred specifically for fighting.

    (5) any dog with a prior history of:

        (a) causing **bodily injury** to a person; or

        (b) attacking or biting another animal;

    established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

p)   arising out of biological deterioration or damage.

2.  Coverage E — Personal Liability does not apply to:

a)   liability under any loss assessment contract or agreement unless optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

b)   liability assumed under any unwritten contract or agreement, or by contract or agreement in connection with any **business** of an **insured**.

c)   **property damage** to property owned, produced or distributed by an **insured**.

d)   **property damage** to property rented to, occupied or used by, or in the care of an **insured**.

This exclusion 2.d) does not apply to **property damage**:

    (1) caused by fire, smoke, or explosion; or

    (2) to house furnishings or premises rented to, occupied or used by or in the care of an **insured** for which the **insured** is legally liable.

    e)  **bodily injury or property damage for which an insured** under this policy is also an insured under a nuclear energy liability policy; or would be an insured but for its termination upon exhaustion of its limit of liability.

    f)  **bodily injury to an insured** as defined in Section II — Liability Definitions 5.a) and 5.b).

3.  Coverage F — Medical Payments to Others does not apply to **bodily injury:**

    a)  to a residence employee if it occurs off the insured location. It does apply if the bodily injury arises out of the residence employee's employment by an insured.

    b)  from a nuclear reaction, radiation or radioactive contamination, or a consequence of any of these. It does not matter that these are controlled or uncontrolled.

H4

# *Liability Conditions*

1. **Limits of Liability.** Our total liability under Coverage E for all damages resulting from one occurrence will not exceed the limit for Coverage E shown on the Declarations. This is true regardless of the number of insureds, claims made or persons injured.

   Our total liability under Coverage F for all medical expense for bodily injury to one person resulting from one accident will not exceed the limit for Coverage F shown on the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each insured. This condition does not increase our limit of liability for one occurrence.

3. **Duties after Loss.** In case of a loss, you must perform the following duties. You must cooperate with us in seeing that these duties are performed.

   a) give notice to us or our agent as soon as practicable setting forth:
      (1) identity of the policy and insured.
      (2) time, place, and facts of the accident or occurrence.
      (3) names and addresses of the claimants and witnesses.

   b) immediately forward to us every document relating to the accident or occurrence.

   c) at our request, assist in:
      (1) making settlement.
      (2) enforcing a right of contribution or indemnity against a person or entity who may be liable to an insured.
      (3) conducting suits, and attending hearings and trials.
      (4) giving evidence and asking witnesses to attend.

   d) under the coverage — Damage to Property of Others:
      (1) submit to us, within 60 days after the loss, a sworn proof of loss; and
      (2) exhibit the damaged property, if within the insured's control.

   e) the insured shall not, except at the insured's own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the bodily injury.

   f) Under the coverage — Accidental Death Benefits:
      (1) you agree to authorize us to receive medical reports and copies of supporting records;
      (2) we have the right and opportunity to make an autopsy where not forbidden by law.

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone on behalf of the injured person will:

   a) give us written proof of claim, under oath if required, as soon as possible.

   b) authorize us to obtain copies of medical reports and records. The injured person will submit to physical examination by a physician we select. This may be as often as we require with good reason.

5. **Suit Against Us.** No action can be brought against us unless there has been full compliance with the policy provisions. No one has a right to join us as party to an action against an insured. No action with respect to Coverage E can be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

6. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an insured will not relieve us of our obligations under this policy.

# *Policy Coverage Options*

The following options apply only if they are indicated on the Declarations. They are subject to all provisions of this policy except as modified herein.

**Option A.   Jewelry.** The coverage for jewelry, watches and furs is amended as follows:

   We will pay for accidental direct physical loss except that caused by:

1.   wear and tear or mechanical breakdown.

2.   gradual deterioration or inherent vice.

3.   insects or vermin.

4.   losses excluded under Section I — Property Exclusions that apply to personal property.

**Option B.   Guns.** The coverage for guns, including accessories is amended as follows:

   We will pay for accidental direct physical loss except that caused by:

1.   wear and tear, mechanical breakdown or gradual deterioration.

2.   insects or vermin.

3.   refinishing, renovating or repairing.

4.   dampness or temperature extremes, rust, fouling or explosion.

5.   inherent defect or faulty manufacture.

6.   breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.

7.   losses excluded under Section I — Property Exclusions that apply to personal property.

**Option C.   Cameras.** The coverage for cameras (film, digital or video), including accessories, is amended as follows:

   We will pay for accidental direct physical loss except that caused by:

1.   wear and tear, mechanical breakdown or gradual deterioration.

2.   renovating or repairing, rust, dampness or temperature extremes.

3.   inherent defect or faulty manufacture, insect or vermin.

4.   breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.

5.   losses excluded under Section I — Property Exclusions that apply to personal property.

The limits of liability for property covered by Options A, B or C are amended as follows:

The option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against.  It is the total limit, with a $1,000 maximum for any one item, for loss by:

1.   theft; or

2.   a covered peril other than the Coverage C — Personal Property Perils Insured Against.

*Policy Coverage Options* _____

**Option D.**  **Silverware.** The coverage and limits of liability for silverware, silver-plated ware, goldware, gold-plated ware and pewterware is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1.  wear and tear, mechanical breakdown or gradual deterioration.

2.  renovating or repairing, rust, dampness or temperature extremes.

3.  inherent defect or faulty manufacture, insect or vermin.

4.  breakage, marring, scratching, or denting; unless caused by fire, thieves or vehicular accident.

5.  losses excluded under Section I — Property Exclusions that apply to personal property.

This option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against. It is the total limit for loss by:

1.  theft; or

2.  a covered peril other than the Coverage C — Personal Property Perils Insured Against.

**Option E.**  **Tools.** The special limit of liability applying to tools is increased to the amount shown on the Declarations.

**Option F.**  **Money.** The special limit of liability on money, bank notes, bullion, gold (other than goldware), silver (other than silverware), platinum, coins, stored value cards, smart cards, gift certificates and medals is increased to the amount shown on the Declarations.

**Option G.**  **Securities.** The special limit of liability on securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets is increased to the amount shown on the Declarations.

**Option H.**  **Computers.** The special limit of liability on computers, including hardware and software accessories is increased to the amount shown on the Declarations.

**Option I.**  **Business Property.** The special limit of liability on **business** property is increased to the amount shown on the Declarations. It includes up to $250 of coverage for business property off the residence premises.

**Option J.**  **Extended Replacement Cost Coverage.** Option J does not increase the policy's limit of liability.

1.  Loss to the following property shall be settled at replacement cost or the full cost to repair without deduction for depreciation:

    a)  property covered under Coverage C — Personal Property.

    b)  outdoor antennas, carpeting (including wall-to-wall), home appliances, and awnings.

    "Replacement cost" means the cost, at the time of loss, of a new article identical to the one damaged or stolen. When the identical article is no longer available, replacement cost shall mean the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness.

    Our liability for loss under this coverage shall be the lesser of:

    a)  replacement cost at the time of loss;

    b)  full cost of repair;

K2

c) any special limits of liability described in this policy or attached by endorsement; or

d) our cost to repair or replace any part of the damaged or stolen property with equivalent property.

We will not pay more than the actual cash value of the damaged or stolen property until it has been repaired or replaced.

2. You may elect not to repair or replace some or all of the damaged or stolen property. In this event, settlement will be based on the smallest of the repair cost, replacement cost, any special limit of liability that applies or the actual cash value of those items. If you later decide to repair or replace those items, you may make an additional claim within 180 days after the loss for any difference between the amount paid and the amount payable if repaired or replaced. The actual repair or replacement of the property need not be completed within the 180 days, but payment will not be made until proof of repair or replacement is provided to us.

3. This coverage does not apply to:

a) manuscripts, antiques or fine arts which by their inherent nature cannot be replaced with new articles.

b) memorabilia, souvenirs, collectors' items, and other items whose age and history contribute substantially to their value.

c) property not maintained in good or workable order.

d) property which is obsolete or useless to you at the time of loss.

The **actual cash value** provisions of this policy apply to the preceding items 3.a) through 3.d).

**Option K.** **Replacement Cost Plus (Dwelling) (Increased Coverage A Limit).** When a loss covered by this policy occurs to the dwelling in which you live, located at the **residence premises**, we will settle losses, subject to applicable deductibles, according to the policy provisions.

If the amount actually and necessarily spent to repair or replace the dwelling is more than the Coverage A — Dwelling Limit of Liability, we will pay up to a maximum of an additional 25% of the Coverage A limit for the additional cost. This additional amount applies only to the dwelling insured under this policy identified as the **residence premises** on the Declarations. This coverage does not increase or affect any other coverage limit or limit of liability in this policy. This additional payment is subject to the following provisions:

**SPECIAL CONDITIONS:**

You must:

1. insure the dwelling in which you live, located at the **residence premises**, to 100% of the cost to repair or replace it; and

2. accept the annual adjustment in the Coverage A — Dwelling limit of liability due to Inflation Protection Coverage and pay the premium charged; and

3. notify us within 90 days of the start of any physical improvements or additions which increase the replacement cost value of your dwelling by $5,000 or more and pay any additional premium due.

You must comply with these special conditions or we will pay no more than the policy limit in effect on the date of loss, less applicable deductibles.

### ORDINANCE OR LAW EXCLUSION

The additional amount provided by this option does not cover any increased cost resulting from enforcement of any ordinance or law regulating the construction, use or repair of any property, or requiring the tearing down of any property, including the cost of removing such debris.

**Option L.  Protective Device Credit.** For a premium credit, we acknowledge the installation of qualified protection devices on the residence premises.

**You agree to:**

1.  maintain these devices in working order; and
2.  notify us promptly, of any changes made in the devices or if they are removed.

**Option M.  Personal Injury Coverage under Coverage E — Personal Liability,** the definition of bodily injury is amended to include **personal injury.**

**Personal injury** means injury as a result of:

1.  false arrest, false imprisonment, wrongful eviction, or wrongful entry;
2.  wrongful detention, malicious prosecution, or humiliation;
3.  libel, slander, defamation of character; or
4.  invasion of rights of privacy.

Section II — Liability Exclusions do not apply to personal injury. Personal injury coverage does not apply to:

1.  liability assumed by an insured under a contract or agreement;
2.  injury caused by violation of a penal law or ordinance if committed by or with the knowledge or consent of an insured;
3.  injury sustained by a person as a result of an offense directly or indirectly related to that person's employment by the insured;
4.  injury arising out of or in connection with business pursuits of an insured;
5.  injury arising out of any professional liability;
6.  injury resulting from an insured transmitting a communicable disease, including injury arising from the possibility of such transmission;
7.  civic or public activities performed for pay, other than reimbursement of expenses, by an insured; or
8.  injury to an insured as defined in general Definitions 4.a) and 4.b).

**Option N.  Loss Assessment Coverage.**

We agree to pay your share of an assessment charged against all members of the **Association. "Association"** means the management body of the property owners. They must have common property interest with you. The common property must be part of the housing development where **you** live, as shown on the Declarations. We will pay up to the limit, shown for this option on the Declarations, in effect at the time of the loss which results in an assessment.

The assessment must be the result of:

1.  a direct loss to property collectively owned by the **Association.** It must be caused by a peril covered under Section I of this policy;

2. an event of the type covered by Section II of this policy; or

3. damages the Association is legally obligated to pay due to personal injury as a result of:

    a) false arrest, false imprisonment, wrongful eviction, or wrongful entry;

    b) wrongful detention, malicious prosecution, misrepresentation, or humiliation;

    c) libel, slander, defamation of character; or

    d) invasion of rights of privacy.

This coverage is excess over other valid and collectible insurance covering the Association. Loss under subparagraph 1. is subject to the Section I deductible shown on the Declarations.

## Option O.  Building Ordinance or Law Coverage.

We agree to cover the increased cost resulting from any ordinance or law regulating the:

1. construction;

2. repair;

3. renovation;

4. remodeling; or

5. demolition;

of covered building structures damaged by a Peril Insured Against.

**LIMIT OF PAYMENT**

The amount of ordinance or law coverage is shown on the Declarations. It is a percentage of the Coverage A — Limit of Liability shown on the Declarations at the time of loss. This is additional coverage.

The damaged or destroyed building structure must be repaired or replaced at the residence premises.

**SPECIAL EXCLUSIONS**

We will not pay costs:

1. required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure;

2. resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure.

    However, this exclusion does not apply if the total damage to the covered building structure is more than 50% of the building's replacement cost, less any ordinance or law expenses, at the time of the loss.

## Option P.  Limited Water Back up of Sewers or Drains Coverage.  We will pay up to a maximum of $5,000 for all damage to:

1. the Coverage A — Dwelling; and

2. the following personal property:

    a) clothes washers and dryers;

    b) food freezers and the food in them;

    c) refrigerators;

    d)  ranges;

    e)  portable dishwashers; and

    f)  dehumidifiers;

caused by or resulting from water or water-borne material which:

a)  backs up through sewers or drains from outside the dwelling's plumbing system; or

b)  overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area.

**EXCLUSIONS**

We do not cover:

1.  other personal property not specified above;

2.  loss caused by the negligence of an insured; or

3.  if the loss occurs or is in progress within the first five (5) days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

**DEDUCTIBLE**

We will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations, or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.

**Option Q.**  **Earthquake and Volcanic Eruption Coverage.**  We insure for direct physical loss to property covered under Section I — Property Coverages caused by earthquake or volcanic eruption. Volcanic eruption means:

1.  eruption;

2.  explosion; or

3.  discharge;

from a volcano.

One or more earthquake shocks or volcanic eruptions that occur within a 72-hour period will constitute a single earthquake or volcanic eruption.

This coverage does not increase the limits of liability stated in the policy.

**DEDUCTIBLE**

The earthquake and volcanic eruption deductibles are shown on the Declarations.  It replaces any other deductible provision in this policy for covered earthquake and volcanic eruption loss.

We will pay only that part of the loss over the earthquake deductible percentage shown on the Declarations. The percent deductible applies separately to each coverage limit and applies separately to loss under each Section I coverage. This includes Building Additions and Alterations Coverage if included in the policy. The deductible amount will not be less than the earthquake dollar deductible on the Declarations for any one loss.

**SPECIAL EXCLUSIONS**

We do not cover loss resulting directly or indirectly from flood of any nature or tidal wave, whether caused by, resulting from, contributed to, or aggravated by earthquake or volcanic eruption.

**Option R.** **Broad Water Back up of Sewers or Drains Coverage.** We will pay up to the limit of liability, shown on the Declarations for this option, at the time of loss, for direct damage to covered property caused by or resulting from water or water-borne material which:

1.  backs up through sewers or drains from outside the dwelling's plumbing system; or

2.  overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area.

This is the most we will pay for all covered property under Coverage A — Dwelling, Coverage B — Other Structures and Coverage C — Personal Property.

**EXCLUSIONS**

We do not cover:

1.  loss caused by the negligence of an insured; or

2.  if the loss occurs or is in progress within the first five days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

**DEDUCTIBLE**

We will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.



# *General Policy Conditions*

### 1. HOW YOUR POLICY MAY BE CHANGED

a) Any part of this policy, which may be in conflict with statutes of the state in which this policy is issued, is hereby amended to conform.

b) Any insured will automatically have the benefit of any broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.

c) A waiver or change of a part of this policy must be in writing by us to be valid. Our request for an appraisal or examination does not waive our rights.

d) The premium for the coverage provided by this policy and attached endorsements is based on information in our possession. Any change or correction in this information will allow us to make an adjustment of the premium.

### 2. CONCEALMENT OR FRAUD

a) This policy is void as to all insureds if you or any other insured has intentionally misrepresented any material fact or circumstance which would have caused us not to issue or renew this policy.

b) This policy does not provide coverage for all insureds if you or any other insured, either before or after a loss, has:

(1) Intentionally concealed or misrepresented any material fact or circumstance; or

(2) committed any fraud or made false statements relating to such loss.

### 3. RENEWAL

This policy is written for a specific policy period as shown on the Declarations. We will renew it for successive policy periods subject to the following conditions:

a) Renewal will be in accordance with the policy forms, rules, rates and rating plan in use by us at the time.

b) All premiums, premium installment payments and fees must be paid when due.

c) Prior to the expiration of a policy period for which premium has been paid, we will mail a notice to the named insured for the premium required to renew or maintain the policy in effect. We will mail this notice to the address last known to us.

d) You agree to an interior inspection of your home by one of our representatives to determine your continued eligibility. Such inspection will not be performed more than once a year with prior advance notice. Failure to allow an interior inspection in accordance with these terms may result in nonrenewal of your policy.

### 4. NON-RENEWAL

a) At the end of each policy period, we will have the right to refuse to renew this policy.

b) If we elect not to renew, we will mail written notice to the named insured, at the address shown in this policy, at least 30 days before the renewal date of this policy. Proof of mailing shall be proof of notice.

c) For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.

### 5. CANCELLATION DURING POLICY PERIOD

Any named insured may cancel this policy at any time by returning it to us or by notifying us in writing of the future date cancellation is to take effect.

We may cancel this policy only for the reasons stated in this condition by notifying the named insured in writing of the date cancellation takes effect. This cancellation notice will be mailed to the named insured at the address shown in the policy. Proof of mailing will be proof of notice. The reason(s) for the cancellation shall accompany the notice.

L1

*General Policy Conditions* _____

a) When premium has not been paid, whether payable to us or our agent or under a finance or credit plan, we may cancel at any time by giving notice at least 10  days before cancellation takes effect.

b) When this policy has been in effect 60 days or less and is not a renewal with us, we may cancel for any reason by giving notice at least 10 days before cancellation takes effect.

c) When this policy has been in effect for more than 60 days, or at any time if it is a renewal, we may cancel if:

(1) there has been fraud or material misrepresentation made by or with the knowledge of the named insured in obtaining the policy, continuing the policy or presenting a claim under the policy;

(2) there has been a material change in the risk which substantially increases hazard insured against after policy issuance;

(3) there has been a violation of any local fire, health, safety, building or construction regulation or ordinance which substantially increases any hazard insured against under the policy; or

(4) there has been a material violation of a material provision of the policy.

This can be done by giving notice at least 20 days before cancellation takes effect.

d) When this policy is written for a period longer than one year, we may cancel for any reason at its anniversary by giving notice at least 20 days before cancellation takes effect.

When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to us, we will refund it within a reasonable time after cancellation takes effect.

## 6.  POLICY TRANSFER

This policy may be transferred to another only with our written consent.

## 7.  SUBROGATION

a) When we have paid you for a loss covered under this policy and you also receive payment for the same loss from another person, entity or organization, the amount received will be held by you in trust for us and reimbursed to us to the extent of our payment.

b) An insured may, before loss occurs, waive in writing all rights of recovery against any person. The insured will provide us with proof of the waiver, when requested by us. If not waived, when we pay a loss, an insured's right to recover from someone else becomes ours up to the amount we paid. An insured must protect these rights and help us enforce them. This condition does not apply to "Medical Payments to Others" or the "Damage to Property of Others" protection.

However, we will be entitled to a recovery only after the insured has been fully compensated for the loss sustained.

## 8.  DEATH

If you die, we continue to insure:

a) the legal representative of the deceased, only with respect to the premises and property of the deceased covered under this policy at the time of death.

b) a member of your household who is an insured at the time of death, but only while a resident of the residence premises.

c) with respect to your property, the person having proper custody of the property until appointment of a legal representative.

## 9.  ADDITIONAL INSURED - NON OCCUPANT

An additional insured may be named in this policy.  The additional insured's interest in the residence premises is protected under Coverage A and Coverage B. The additional insured is also protected under Coverage E for liability from the ownership, maintenance, or use of the residence premises. This provision does not increase the amount of insurance.



*General Policy Conditions*

### 10. OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS

The first named insured may pay the premium for this policy in installments, under the terms and conditions approved where required by the Department of Insurance. For each separate installment payment there is an installment premium payment charge. Your agent or sales representative can provide more information.

### 11. NON-SUFFICIENT FUNDS CHARGE

The company reserves the right to impose a fee for any premium payment that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments.

### 12. DIVIDENDS

The first named insured is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

## MUTUAL POLICY CONDITIONS

(Applicable only to policies issued by Nationwide Mutual Insurance Company – Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the first named insured is a member of the company issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the first named insured is entitled to one vote only – regardless of the number of policies issued to the first named insured – either in person or by proxy at meetings of members of said company.

The annual meeting of members of the Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of the Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday in April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the first named insured at the address last known to it. The company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning the first named insured is not subject to any assessment beyond the premiums the above companies require for each policy term.

*General Policy Conditions* _____

**IN WITNESS WHEREOF:** Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, or Nationwide Property and Casualty Insurance Company, whichever is the issuing company as shown in the Declarations, has caused this policy to be signed by its President and Secretary, and countersigned as may be required by a duly authorized representative of the company.

**Secretary**
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company

**President**
Nationwide Mutual Insurance Company
Nationwide Property & Casualty Insurance Company
Nationwide Mutual Fire Insurance Company

**Secretary**
Nationwide Property & Casualty Insurance Company

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company
Home Office: Columbus, Ohio 43215-2220

L4

As a duly authorized Nationwide associate entrusted with oversight of the system of record from which this copy was produced, based upon information and belief,
I certify that this copy of policy **63 03 HO 282176** was made at or near the time of certification, as part of regularly conducted business activities, and is a true and accurate copy of the official record kept as part of regular business activities.

_____        8/30/2011

Signature                                                    Date

  **6303ho282176 Cert policy**
Jon King   to: Paula Abbott
Cc:  Rsc_Certified RSCCERT                          08/30/2011 07:42 AM

Here is the certified dec pages and/or policy you requested.

(All applicable dec pages, policy jacket/endorsements, and certified cover sheet are attached.)

Thank You
Jon

         

Jon - Certified Policy Cover sheet.pdf   2-21-11.pdf   HO03A.pdf   H6146.pdf

   **I am _On Your Side_®**

**Jon A. King**
**Document Retrieval**
Kingj43@nationwide.com

**Think Green**
before printing this e-mail

## IN THE CIRCUIT COURT OF FAULKNER COUNTY, ARKANSAS
## FIFTH DIVISION

**KAREN MAYFIELD**

PLAINTIFF

FILED

2012 APR 25 PM 3 53

RHONDA WHARTON CLERK

BY _____ DC

**VS.**           **CASE NO. 23CV-2012-337**

**NATIONWIDE MUTUAL FIRE**
**INSURANCE COMPANY**

**DEFENDANT**

### AFFIDAVIT OF SERVICE

State of Arkansas
County of Faulkner

Before the undersigned, duly qualified and acting in and for said county and state, appeared Michael U. Sutterfield, to me well known to be the affiant herein, who stated the following under oath:

I, Michael U. Sutterfield, Attorney at Law, at an address of 515 Oak Street, Suite A, Conway, Arkansas, do state under oath that I sent a letter dated April 19, 2012, which enclosed a Complaint for Breach of Contract and a Summons regarding the above styled case, to Mr. Jay Bradford, Registered Agent for Service of Process for Nationwide Mutual Fire Insurance Company, at an address of 1200 West 3rd Street, Little Rock, AR 49327. Service was administered by Certified, Return Receipt, Restricted U.S. Mail No. 7010 2780 0001 4453 4187. Attached hereto and marked Exhibit "A" is the receipt of service dated April 20, 2012. I, Michael U. Sutterfield, have read the above and foregoing statements and state that they are true and correct to the best of my knowledge and belief.

In witness whereof, I have hereunto set my hand this ___ day of April, 2012.

_____
Michael U. Sutterfield

Subscribed and sworn to before me this the 25 day of April, 2012.

_____
Notary Public

My commission expires:
8/19/19

OFFICIAL SEAL - #12372623
JENNA HEFNER
NOTARY PUBLIC-ARKANSAS
FAULKNER COUNTY
MY COMMISSION EXPIRES: 08-19-19

23CV-12-337      231-23100002556-011
KAREN MAYFIELD V NATIONWIDE  2 Pages
FAULKNER CO      04/25/2012 03:53 PM
CIRCUIT COURT                  FI2B5

EXHIBIT "A"

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X _Camula Davis Rooney_  ☐ Agent  ☑ Addressee <br> B. Received by *(Printed Name)*   C. Date of Delivery |
| 1. Article Addressed to: <br><br> Jay Bradford <br> Registered Agt for Service of Process <br> Nationwide Mutual Fire Ins. Co. <br> AR Insurance Dept., Legal <br> 1200 West 3rd Street <br> LR, AR  72201 | D. Is delivery address different from item 1? ☐ Yes <br> If YES, enter delivery address below: ☐ No <br><br> APR 2 0 REC'D <br><br> 3. Service Type <br> ☑ Certified Mail  ☐ Express Mail <br> ☐ Registered  ☐ Return Receipt for Merchandise <br> ☐ Insured Mail  ☐ C.O.D. <br> 4. Restricted Delivery? *(Extra Fee)*  ☑ Yes |
| 2. Article Number <br> *(Transfer from service label)*  7010 2780 0001 4453 4187 | |
| PS Form 3811, February 2004   Domestic Return Receipt | 102595-02-M-1540 |

IN THE CIRCUIT COURT OF FAULKNER COUNTY, ARKANSAS
DIVISION
## 5th DIVISION

KAREN MAYFIELD                                          PLAINTIFF

VS.                   CASE NO. 23 CV-12-337

NATIONWIDE MUTUAL FIRE                                  DEFENDANT
INSURANCE COMPANY

### SUMMONS

**_THE STATE OF ARKANSAS TO:_**                  *Plaintiff's Attorney:*
**NATIONWIDE MUTUAL FIRE**                       MICHAEL U. SUTTERFIELD
**INSURANCE COMPANY**                            515 OAK ST, SU. A
**Jay Bradford, the Agent for Service**          CONWAY, ARKANSAS 72032
**of Process**

### NOTICE

1. You are hereby notified that a lawsuit has been filed against you; the relief asked is in the attached Complaint.

2. The attached Complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the Complaint unless you file a written answer or motion under Rule 12 of the Arkansas Rules of Civil Procedure and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

   A. It must be in writing and otherwise comply with the Arkansas Rules of Civil Procedure.

   B. It must be filed in the court clerk's office within **30 DAYS** from the day you were served with the summons at an address of: **Ms. Rhonda Wharton, Faulkner County Circuit Clerk, 801 Locust Street, Conway, AR 72034**

3. If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4. Additional notices: NONE AT THIS TIME

Witness my hand and the seal of this Court this 16 day of *April*, 2012.

Clerk: RHONDA WHARTON                    BY: _____ D.C.

**********************************************************************************

On this the _____ day of _____, 2012, I, _____, having duly served the

within Writ by delivering a copy, and stating the substance thereof, to the within named _____, in

the County of _____, as I am commanded. Filed this _____ day of _____, 2012.

23CV-12-337      231-23100002472-013
KAREN MAYFIELD V NATIONWIDE M 1 Page
FAULKNER CO      04/18/2012 04:00 PM
CIRCUIT COURT                     5550

PROCESS SERVER: _____

IN THE CIRCUIT COURT OF FAULKNER COUNTY, ARKANSAS
5TH DIVISION

FILED
2012 MAY 16  AM 10 37
RHONDA WHARTON, CLERK
BY _____ DC

KAREN MAYFIELD                                                                    PLAINTIFF

V.                                              NO.  CV-2012-337-5

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY                                                       DEFENDANT

## ANSWER TO PLAINTIFF'S COMPLAINT

Comes now Defendant, Nationwide Mutual Fire Insurance Company (hereinafter, "Nationwide"), by and through its attorneys, Watts, Donovan & Tilley, P.A., and for its Answer to Plaintiff's Complaint, herein states:

1.     Nationwide admits the allegations contained in paragraph numbers 1, 2, 3, 4 and 5 of Plaintiff's Complaint.

2.     Nationwide admits the allegations contained in paragraph number 6 of Plaintiff's Complaint that pursuant to a contractual agreement by and between Plaintiff and Nationwide, attached to Plaintiff's Complaint as Exhibit A, the policy at issue, Nationwide agreed to provide certain insurance coverages to Plaintiff and her now deceased husband on the property at issue, under certain circumstances, including the dwelling, other structures and personal property.  Nationwide generally and specifically denies the remaining allegations contained in paragraph number 6 of Plaintiff's Complaint.

3.     Nationwide admits the allegations contained in paragraph numbers 7 and 8 of Plaintiff's Complaint.

4.      Nationwide admits Plaintiff suffered some damage to property located at 35 Stone Hill Drive in Mayflower, Faulkner County, Arkansas, as a result of winds associated with a storm on or about April 25, 2011. However, Nationwide affirmatively states a great deal of Plaintiff's current damage pre-existed that storm and/or resulted from Plaintiff's failure to mitigate her damages following same. Nationwide generally and specifically denies the remaining allegations contained in paragraph number 9 of Plaintiff's Complaint.

5.      Nationwide admits the allegations contained in paragraph number 10 of Plaintiff's Complaint that Plaintiff suffered some damages as a result of the April 25, 2011, storm. Pleading affirmatively, Nationwide states a great deal of Plaintiff's damages pre-existed the storm, however, and/or were resultant from Plaintiff's failure to mitigate her damages after same. Nationwide generally and specifically denies the remaining allegations contained in paragraph number 10 of Plaintiff's Complaint.

6.      Nationwide admits the allegations contained in paragraph number 11 of Plaintiff's Complaint that she gave notice of her claim to Nationwide through her agent, Brad Barnett. Nationwide generally and specifically denies the remaining allegations contained in paragraph number 11 of Plaintiff's Complaint.

7.      Paragraph number 12 of Plaintiff's Complaint does not contain allegations requiring a Response. However, to the extent this Court determines it does require a Response, any allegations contained therein are hereby generally and specifically denied.

2

8.     Nationwide admits the allegations contained in paragraph number 13 of Plaintiff's Complaint that Plaintiff and Nationwide entered into an express contract, the terms of which were set out in the policy, attached as Exhibit A to Plaintiff's Complaint, and that pursuant thereto Nationwide was to provide certain insurance coverages to Plaintiff's real and personal property under certain circumstances. Nationwide generally and specifically denies the remaining allegations contained in paragraph number 13 of Plaintiff's Complaint, as well as all allegations inconsistent with the policy.

9.     Nationwide admits the agreement between it and Plaintiff, the policy, which is attached as Exhibit A to Plaintiff's Complaint, and generally and specifically denies any allegations contained in paragraph number 14 of Plaintiff's Complaint inconsistent with the language of the policy.

10.     Nationwide admits that on or about April 25, 2011, while the insurance coverage at issue was in force and in effect, Plaintiff's property suffered some damages as a result of winds.  Nationwide generally and specifically denies the remaining allegations contained in paragraph number 15 of Plaintiff's Complaint.

11.     Nationwide admits the allegation contained in paragraph number 16 of Plaintiff's Complaint that Plaintiff notified it that she had sustained some damage in a timely manner; however, generally and specifically denies Plaintiff timely notified it of all alleged damage to her property.  Nationwide generally and specifically denies the remaining allegations contained in paragraph number 16 of Plaintiff's Complaint.

3

12.    Nationwide generally and specifically denies the allegations contained in paragraph number 17 of Plaintiff's Complaint.

13.    Nationwide admits the allegations contained in paragraph number 18 of Plaintiff's Complaint that Plaintiff has made a demand for payment from it, has submitted a claim, gave a recorded statement, produced some documents concerning her damages and the repairs claimed and provided an opinion from an expert concerning her claim. Nationwide generally and specifically denies the remaining allegations contained in paragraph number 18 of Plaintiff's Complaint.

14.    Nationwide generally and specifically denies the allegations contained in paragraph numbers 19 and 20 of Plaintiff's Complaint.

15.    In Response to paragraph number 21, Nationwide affirmatively states the policy at issue speaks for itself, and generally and specifically denies any allegations contained in paragraph number 21 of Plaintiff's Complaint inconsistent therewith, as well as inconsistent with Arkansas law. The remaining allegations of paragraph number 21 of Plaintiff's Complaint are hereby generally and specifically denied.

16.    Nationwide generally and specifically denies the allegations contained in paragraph numbers 22, 23, 24 and 25 of Plaintiff's Complaint.

4

17.     Paragraph number 26 of Plaintiff's Complaint does not contain allegations requiring a Response.  However, to the extent this Court determines to the contrary, any allegations contained in paragraph number 26 of Plaintiff's Complaint are hereby generally and specifically denied.

18.     Nationwide generally and specifically denies the allegations contained in paragraph numbers 27, 28, 29 and 30 of Plaintiff's Complaint.

19.     Nationwide admits the allegations contained in paragraph number 31 of Plaintiff's Complaint.

20.     Nationwide admits the allegations contained in paragraph number 32 of Plaintiff's Complaint that Plaintiff submitted some documents to Nationwide, specifically a proof of loss, which Nationwide ultimately rejected.  Nationwide generally and specifically denies the remaining allegations contained in paragraph number 32 of Plaintiff's Complaint.

21.     Nationwide generally and specifically denies the allegations contained in paragraph numbers 33 and 34 of Plaintiff's Complaint.

22.     Nationwide generally and specifically denies the allegations contained in paragraph number 35 of Plaintiff's Complaint, including subparagraph numbers a, b, c and d thereof, as well as paragraph numbers 36 and 37 of Plaintiff's Complaint.

23.     Nationwide generally and specifically denies the allegations contained in the WHEREFORE paragraph of Plaintiff's Complaint.

24.    All allegations contained in Plaintiff's Complaint not specifically admitted herein, are hereby generally and specifically denied.

25.    Pleading affirmatively, Nationwide states one or more of the following affirmative defenses applies and acts in bar of and/or in diminution in value of Plaintiff's claim for damages: accord and satisfaction, estoppel, failure to mitigate, failure to satisfy conditions precedent to making a claim under the policy, latches, and waiver.

26.    Plaintiff's claim for bad faith should be dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure, for failure to state facts sufficient to form the basis for relief for such a cause of action.

WHEREFORE, premises considered, Defendant, Nationwide Mutual Fire Insurance Company, prays this Court enter its Order granting its Motion to Dismiss and holding Plaintiff's Complaint against it for naught, for its costs and attorneys' fees and for all other just and proper relief to which it may show itself entitled.

Respectfully submitted,

WATTS, DONOVAN & TILLEY, P.A.
200 RIVER MARKET AVENUE, SUITE 200
LITTLE ROCK, AR 72201-1769
(501) 372-1406
(501) 372-1209 FAX

By: _____
MICHAEL MCCARTY HARRISON (98201)

6

## CERTIFICATE OF SERVICE

I, Michael McCarty Harrison, hereby certify that a copy of the above and foregoing pleading was mailed to all attorneys of record as listed below this 15 day of May, 2012.

Mr. Michael U. Sutterfield
Law Offices of Michael U. Sutterfield
P.O. Box 933
Conway, AR 72033-0933

MICHAEL McCARTY HARRISON